# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC, | Civil Action |
| Plaintiff, | No. 1:24-cv-00366-TSC |
| v. | **DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| DEBRA A. HAALAND, et al. | |
| Defendants. | |

## INTRODUCTION

Defendants U.S. Department of the Interior ("Interior") *et al.* hereby move to dismiss the complaint brought by Plaintiff Signal Peak Energy, LLC ("Signal Peak") for lack of jurisdiction and failure to state a claim.  Signal Peak brings one claim under an amendment to the National Environmental Policy Act ("NEPA") enacted in the Fiscal Responsibility Act ("FRA") of 2023, Pub. L. No. 118-5, 137 Stat. 10, 42 U.S.C. § 4336a(g).  In the FRA, Congress imposed certain deadlines on analyses conducted pursuant to NEPA, *id.* § 4336a(g)(1), (2), and provided project sponsors with a right to petition to federal court when an agency has failed to act in accordance with an applicable deadline.  *Id.*  Signal Peak claims that the Office of Surface Mining Reclamation and Enforcement ("OSMRE") has violated those timelines and asks the Court to establish a new NEPA schedule for OSMRE to complete the environmental analysis.  The fundamental problem with Signal Peak's suit is that it was brought prematurely.  Signal Peak alleges that OSMRE's deadline to complete the NEPA process at issue is December 2024.  While Defendants do not agree that Signal Peak is correct about the deadline, even as pled, any such deadline would still be months away, and therefore the suit must be dismissed because it is not ripe and because it fails to state a valid claim.

## BACKGROUND

I.    **OSMRE's Approval of a Mining Plan Modification for the Bull Mountains Mine and Related Litigation**

The Bull Mountains Mine No. 1 ("Bull Mountains Mine") has a long history of public interest and legal challenges, including numerous challenges under NEPA to the adequacy of the Department of the Interior's analyses of the environmental impacts of leasing and mining federal coal at this mine.  In 2008, Signal Peak applied to the Bureau of Land Management ("BLM") for a federal coal lease to expand its underground mining operations.  *N. Plains Res. Council Inc. v.*

*U.S. Bureau of Land Mgmt.*, No. CV 14-60-BLG-SPW, 2016 WL 1270983, at *3 (D. Mont. Mar. 31, 2016), *aff'd* 725 F. App'x 527 (9th Cir. 2018).  As part of BLM's review process, in April 2011, BLM prepared an environmental assessment ("EA").  *Id*.  Environmental groups challenged the EA, and it was upheld.[1]

On June 1, 2012, BLM leased the federal coal to Signal Peak.[2]  In August 2013, at OSMRE's recommendation, the Department approved a federal mining plan for a portion (140 acres) of the leased federal coal.[3]  Signal Peak subsequently applied to the state mining regulator for a permit amendment, *i.e.*, Amendment 3, for the area containing the remainder of the leased federal coal (2,539.76 acres).  2020 EA at 3.  On November 22, 2013, Signal Peak then submitted a request for a mining plan modification to OSMRE for the remainder of the leased federal coal.  *Id*.

OSMRE determined that a new EA was necessary to consider potential changes to the extent or nature of the impacts since those analyzed in BLM's 2011 EA.  *See Mont. Envt'l Info. Ctr. v. U.S. Office of Surface Mining*, 274 F. Supp. 3d 1074, 1084 (D. Mont. 2017).  OSMRE then released a new EA, and the Department approved a mining plan modification on February 24, 2015.  2020 EA at 3.  This decision was challenged, and on August 14, 2017, the District of

---

[1] After preparing the leasing EA, BLM issued a Finding of No Significant Impact ("FONSI") and a Decision Record.  BLM's EA/FONSI and Decision Record were appealed to the Interior Board of Land Appeals (IBLA).  The IBLA affirmed BLM's decision. *See Northern Plains Resource Council*, IBLA 2011-156 (Oct. 22, 2012).  The environmental group then filed a lawsuit with the U.S. District Court for the District of Montana, Billings Division, which ultimately affirmed the EA/FONSI.  *See N. Plains Res. Council Inc.*, 2016 WL 1270983, at *14-15.

[2] *See* BLM, Coal Lease MTM 97988 (June 1, 2021), *available at:* https://svc.mt.gov/deq/myCOALPublic/2733/ePermitAttachment/Download/148041 (last accessed Apr. 14, 2024).

[3] *See* OSMRE, Bull Mountains Mine No. 1, Federal Mining Plan Modification EA (Oct. 2020), pp. 2-3 *available at* https://minedocs.com/21/Bull_MtnMine-EA_Final-102020.pdf (last accessed Apr. 12, 2024) (hereinafter "2020 EA").

Montana held that OSMRE's 2015 EA failed to adequately consider the direct and cumulative impacts of coal transportation and combustion, and the court vacated the 2015 EA and remanded the matter to the agency.  *Mont. Envtl. Info. Ctr.*, 274 F. Supp. 3d at 1105.

OSMRE then prepared another EA, and, on August 3, 2018, the Department approved a new mining plan modification for the leased federal coal.  *350 Montana v. Bernhardt*, 443 F. Supp. 3d 1185, 1190 (D. Mont. 2020), *aff'd in part, rev'd in part sub nom. 350 Montana v. Haaland*, 50 F.4th 1254 (9th Cir. 2022).   In January 2019, another coalition of environmental groups brought suit in the District of Montana challenging this new EA, asserting claims under NEPA and the Endangered Species Act, including a claim that the agency had not adequately analyzed greenhouse gas ("GHG") emissions.  *Id*.  On March 9, 2020, the Court issued a decision ruling in the agency's favor on five out of six counts, but it granted the groups' claim that OSMRE should have conducted additional analysis of the potential risk of train derailments.  *Id.* at 1191-1202.  The Court vacated the 2018 EA, but did not vacate the Department's approval of the mining plan modification and remanded the matter to OSMRE for further proceedings.[4]  *Id.* at 1202.  The environmental groups appealed.

On appeal, the Ninth Circuit held that OSMRE's analysis of GHG emissions violated NEPA.  *See 350 Montana v. Haaland*, 50 F.4th 1254, 1264-72 (9th Cir. 2022).  The Ninth Circuit remanded to the district court with instructions to reconsider, based on the existing record, whether to order an environmental impact statement ("EIS") or remand to the agency so that it may determine in the first instance the appropriate level of NEPA analysis.  *Id.* at 1272-73.  It also directed the district court to undertake additional factfinding to determine whether vacatur

---

[4] In response, OSMRE prepare the 2020 EA.  *See, supra*, n. 3.  This EA has not been challenged.

of the mining plan modification approval is warranted.  *Id.* at 1273.  On remand, OSMRE asserted that it would prepare an EIS, and the parties submitted briefing regarding the issue of vacatur.  The groups sought vacatur and Signal Peak opposed, while the Federal defendants sought a deferred vacatur pending completion of an EIS.

On February 10, 2023, the Court issued an order vacating the mining plan modification.  *See 350 Montana v. Haaland*, No. CV 19-12-M-DWM, 2023 WL 1927307, at *5-6 (Feb. 10, 2023).  Signal Peak filed a motion requesting clarification, wherein it asked the court to defer the vacatur by several months to allow it to reach and mine a pocket of federal coal.  Signal Peak argued that allowing it to continue to mine would be safer and more cost effective because it would allow the company to reach a previously planned recovery room.  The court treated the motion as a motion for clarification and denied the motion.  *350 Montana v. Haaland*, No. CV 19-12-M-DWM, 2023 WL 2273090, at *3-4 (Feb. 28, 2023).  Signal Peak did not appeal.

## II.     The Amendments to NEPA through the Enactment of the FRA in June 2023

NEPA serves the dual purpose of informing agency decision-makers of the significant environmental effects of proposed major federal actions and ensuring that relevant information is made available to the public so that they "may also play a role in both the decisionmaking process and the implementation of that decision."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).  To meet these dual purposes, NEPA requires that an agency prepare a comprehensive EIS for "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  The Council on Environmental Quality's ("CEQ")

regulations implementing NEPA provide guidance as to the nature and content of an EIS.  *See* 40

C.F.R. § 1502.1 (2022).[5]

In June 2023, Congress passed the FRA, Pub. L. No. 118-5, 137 Stat. 10.  The act

contained several amendments to NEPA.  Relevant here, the Act establishes deadlines for the

completion of an environmental impact statement:

> **(g) Deadlines**
> **(1) In general**
> Except as provided in paragraph (2), with respect to a proposed agency action, a
> lead agency shall complete, as applicable--
> > **(A)** the environmental impact statement not later than the date that is 2
> > years after the sooner of, as applicable--
> > > **(i)** the date on which such agency determines that section
> > > 4332(2)(C) of this title requires the issuance of an environmental impact
> > > statement with respect to such action;
> > > **(ii)** the date on which such agency notifies the applicant that the
> > > application to establish a right-of-way for such action is complete; and
> > > **(iii)** the date on which such agency issues a notice of intent to
> > > prepare the environmental impact statement for such action; and . . . .

42 U.S.C. § 4336a(g)(1)(A).  The Act also contains a provision for circumstances in which the

agency is unable to meet the prescribed deadline:

> **(2) Delay**
> A lead agency that determines it is not able to meet the deadline described in
> paragraph (1) may extend such deadline, in consultation with the applicant, to
> establish a new deadline that provides only so much additional time as is

---

[5] CEQ initially promulgated regulations implementing NEPA in 1978, NEPA – Regulations, 43 Fed. Reg. 55,978 (Nov. 29, 1978), and a minor substantive amendment to those regulations in 1986, *see* NEPA Regulations; Incomplete or Unavailable Information, 51 Fed. Reg. 15,618 (Apr. 25, 1986).  In 2020, CEQ substantially revised the regulations.  *See* Update to the Regulations Implementing the Procedural Provisions of the NEPA, 85 Fed. Reg. 43,304 (July 16, 2020).  The 2020 regulations became effective on September 14, 2020.  *Id.*  CEQ amended the regulations again in early 2022 to restore a few discrete provisions of the 1978 regulations, including clarifying that "effects" under NEPA include direct, indirect, and cumulative impacts.  *See* NEPA Implementing Regulations Revisions, 87 Fed. Reg. 23,453 (April 20, 2022).  Those amendments became effective on May 20, 2022.  *Id.*  CEQ issued a proposed rule regarding further amendments to the NEPA regulations in July 2023.  *See* NEPA Implementing Regulations Revisions Phase 2, 88 Fed. Reg. 49,924 (July 31, 2023).

necessary to complete such environmental impact statement or environmental
assessment.

*Id.* at § 4336a(g)(2).  And the Act contains a provision allowing a project sponsor to bring suit

where an agency has missed a statutory deadline:

> **(3) Petition to court**
>> **(A) Right to petition**
>> A project sponsor may obtain a review of an alleged failure by an agency
>> to act in accordance with an applicable deadline under this section by filing a
>> written petition with a court of competent jurisdiction seeking an order under
>> subparagraph (B).
>> **(B) Court order**
>> If a court of competent jurisdiction finds that an agency has failed to act in
>> accordance with an applicable deadline, the court shall set a schedule and
>> deadline for the agency to act as soon as practicable, which shall not exceed 90
>> days from the date on which the order of the court is issued, unless the court
>> determines a longer time period is necessary to comply with applicable law.

*Id.* at § 4336a(g)(3).

## III.    Signal Peak's Claim

On February 7, 2024, Signal Peak filed suit alleging that OSMRE had violated the

statutory deadline in NEPA, as amended by the FRA.  Compl. ¶¶ 113-22.  It alleges that the

NEPA deadline was triggered by a statement that the Federal Defendants made in court on

December 2, 2022, six months prior to the enactment of the FRA, and that OSMRE's two-year

timeframe to complete an EIS therefore expires in December 2024.  *Id.* ¶¶ 115-16.  Although that

date has not yet arrived, Signal Peak claims that it "is entitled to an order from the Court to 'set a

schedule and deadline' for OSMRE to act to ensure compliance with the statutory deadline."  *Id.*

¶ 122.

## STANDARD OF REVIEW

Claims over which a court lacks jurisdiction should be dismissed pursuant to Fed. R. Civ.

P. 12(b)(1).  That rule "requires that the plaintiff bear the burden of establishing by a

preponderance of the evidence that the court has jurisdiction to entertain his claims."  *Bennett v.*

*Ridge*, 321 F. Supp. 2d 49, 51 (D.D.C. 2004), *aff'd sub nom. Bennett v. Chertoff,* 425 F.3d 999

(D.C. Cir. 2005); *see also Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F.

Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion imposes on the court an affirmative

obligation to ensure that it is acting within the scope of its jurisdictional authority.").  A Rule

12(b)(1) motion may be resolved either as a facial challenged based on the pleadings or as a

factual challenge, which may require a court to resolve disputed issues of fact.  *See Herbert v.*

*Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).  In the former scenario, "the

court must accept as true the allegations in the complaint and consider the factual allegations of

the complaint in the light most favorable to the non-moving party." *Erby v. United States*, 424 F.

Supp. 2d 180, 182 (D.D.C. 2006).  In the latter, a court may resolve factual disputes and consider

outside materials, as necessary, for the resolution of the motion.  *See Herbert*, 974 F.2d at 197;

*Erby*, 424 F. Supp. 2d at 182-83.

    A claim may also be dismissed for failure to state a claim upon which relief may be

granted.  Fed. R. Civ. P. 12(b)(6).  On such a motion, a court should accept the factual

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Fraternal Order of Police v. Gates*,

562 F. Supp. 2d 7, 11 (D.D.C. 2008).  But a court is not required to accept as true "legal

conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).  Instead, in order to

survive a motion to dismiss, a complaint's allegations must be sufficient to raise the right to

relief above the speculative level, and "must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Id.*; *see also Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 555 (2007); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir.

2010).  In deciding a motion to dismiss under Rule 12(b)(6), a court should consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Fraternal Order of Police*, 562 F. Supp. 2d at 11) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

**ARGUMENT**

I.    **Signal Peak's Complaint Should Be Dismissed for Lack of Ripeness**

Signal Peak's case is not ripe.  Its sole claim is that OSMRE has failed to comply with a provision of NEPA requiring the agency to complete an EIS within two years.  Compl. ¶¶ 113-20.  The problem with this claim, as the Complaint acknowledges, is that, under no scenario put forward by Plaintiff has OSMRE missed the two-year deadline.  While the date the two-year period began may be uncertain, *see*, *e.g.*, Compl. ¶¶ 8, 115-116 (positing December 2022 and August 2023 as possible beginning dates for the two-year period), even under the interpretation most beneficial to Plaintiff's position, *i.e.*, December 2022, there are still eight months left before the statutory period lapses.[6]  Moreover, the statute expressly allows the agency to extend the two-year period through consultation with the applicant, which could still occur before the two-year deadline lapses.  42 U.S.C. § 4336a(g)(2).  Therefore, Plaintiff's claim is not ripe.

---

[6] Signal Peak alleges that the two-year period may have begun in December 2022 when OSMRE's counsel stated in court proceedings in the District of Montana that OSMRE planned to prepare an EIS.  Compl. ¶¶ 3, 64, 115.  But at the time of that statement, the CEQ regulations indicated that OSMRE had two years from the issuance of a notice of intent to complete an EIS process.  *See* 40 C.F.R. § 1501.10 (2020).  OSMRE did not issue the notice of intent until August 2023.  *See* Notice of Intent to Prepare EIS for Signal Peak's Federal Mine Plan, 88 Fed. Reg. 52,205 (Aug. 7, 2023).  While it is uncertain whether the existing regulations still apply given the intervening passage of the FRA, at the time the court statement was made in December 2022, such a statement would not have triggered the beginning of the two-year timeline.  The Court need not resolve this issue because, even under Plaintiff's theory, OSMRE has until December 2024 to complete the EIS.

The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nevada v. Dept. of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Williams v. Dombeck*, 151 F. Supp. 2d 9, 14-15 (D.D.C. 2001) ("Plaintiffs' anticipated injury is, at this point, based entirely upon speculation and conjecture, and as such, cannot suffice to satisfy Article III's ripeness requirement." (footnote omitted)).

Plaintiff's case lacks the necessary case or controversy to render the case ripe for purposes of Article III. The ripeness doctrine contains both constitutional and prudential components, and the core constitutional requirement is that there be a live case or controversy. *See Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) ("Just as the constitutional standing requirement for Article III jurisdiction bars disputes not involving injury-in-fact, the ripeness requirement excludes cases not involving present injury.").[7] The case is not constitutionally ripe because the complained of injury has not yet occurred and is months away. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). In dismissing a challenge to the Line Item Veto Act as unripe, the D.C. Circuit explained:

---

[7] Signal Peak lacks standing for the same reasons, *i.e.*, it lacks an injury that was caused by OSMRE and that may be redressed by the Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Given that the standing and ripeness doctrines largely overlap in this context, the Court may simply apply the ripeness doctrine.

> In this case, NTEU concedes that "[t]he President … cannot exercise his veto power until January 1, 1997." . . . [I]n this case the veto power is not only unexercised, but is as yet unavailable. . . . We do not mean to imply that NTEU's alleged injury will be sufficiently imminent on January 1 or on the evening of the State of the Union address when the President submits his budget to Congress. It is enough to say that NTEU's claim is not now ripe . . . .

*Id.* So too here.  The statutory deadline to complete the required NEPA analysis is at least several months away, and therefore the case is not constitutionally ripe.

As for prudential ripeness, the Court should balance the plaintiff's "interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystalizing its policy before that policy is subjected to judicial review and the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Wyo. Outdoor Council*, 165 F.3d at 49 (quoting *Eagle-Pitcher Indus. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985)).  The Supreme Court has instructed courts to evaluate three factors in assessing ripeness: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998).  The application of these factors to this case demonstrates that the case is not ripe.

First, the only cognizable interest that Signal Peak has in this case is a procedural interest in having OSMRE issue an EIS in compliance with NEPA, as amended by the FRA.  *See* 42 U.S.C. § 4336a(g)(1)(A).  Plaintiff alleges that OSMRE has failed to act in accordance with a statutory deadline.  *See* Compl. ¶¶ 113-22.  For such a claim to be ripe, however, "a plaintiff seeking to invoke subject matter jurisdiction under the APA must allege that the defendant *had a duty* to perform a non-discretionary act." *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 119 (D.D.C. 2015) (emphasis added).  Signal Peak has not

alleged that OSMRE has failed to fulfill a statutory obligation, and instead asserts only that OSMRE has an obligation to complete the EIS several months from now.  Thus, Signal Peak has failed to show that delayed review will cause it a hardship.[8]

Second, judicial intervention would interfere with the ongoing administrative process. OSMRE initiated the EIS process with the issuance of a notice of intent to prepare an EIS in the Federal Register in August 2023, and that process is ongoing.  *See* 88 Fed. Reg. 52,205 (Aug. 7, 2023).  The next steps will be the issuance of a Draft EIS and the circulation of the draft for public comment, followed by the preparation and publication of the Final EIS.  The agency has many months left to carry out these tasks, regardless of when the NEPA deadline was triggered. Given the long history of litigation over the sufficiency of the Department's NEPA analyses for this mine, OSMRE has a strong interest in ensuring that it produces a thorough and carefully analyzed EIS that accounts for all recent statutory and regulatory changes to NEPA as well as intervening caselaw.  Asking a court to interfere in this process by putting the agency on a timeline *before* the agency has even missed a deadline would severely interfere with an ongoing administrative process, including by forcing the agency to devote limited resources to litigation and thus hampering its ability to complete the NEPA process within a reasonable timeframe.

Third, this case will benefit from further factual development.  This case was precipitated by OSMRE's sharing of a draft schedule with Signal Peak, which estimated that OSMRE would not complete an EIS and reach a decision regarding Signal Peak's mining plan modification until

---

[8] Signal Peak alleges harm due to its inability to conduct mining activities on leased federal coal during the time that the agency takes to conduct an EIS.  *See* Compl. ¶¶ 108-12.  But Signal Peak's inability to mine is a direct result of the District of Montana's order vacating its mining approval, not any action by OSMRE.  *See 350 Montana*, 2023 WL 1927307, at \*5-6. OSMRE must conduct a thorough NEPA analysis—if it does not, the agency runs the risk that the NEPA analysis will again be deemed insufficient and its decision vacated.  In that scenario, Signal Peak still would not be able to mine.

May 2026.  *See* Compl. ¶ 105.  As Signal Peak acknowledges, part of the reason that the NEPA process has not proceeded as quickly as planned is that there have been disagreements between Signal Peak and OSMRE over whether certain analyses are necessary to include in the EIS.  *See id.* ¶¶ 88-90.  With time, these issues may be resolved, and the NEPA process may proceed more quickly than anticipated.  Because Plaintiff has failed to identify any deadline that OSMRE has already missed, there is still time for facts to change or for the parties to resolve these issues and complete the EIS without judicial intervention.  *See Texas v. United States,* 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks and citation omitted); *Nat'l Treasury Emps. Union*, 101 F.3d at 1431 ("Further supporting our decision that this case is prudentially unripe is the usually unspoken element of the rationale underlying the ripeness doctrine:  If we do not decide it now, we may never need to.").

Furthermore, Signal Peak overlooks an important provision in the statute that allows agencies to extend the statutory deadline to complete an EIS.  Specifically, OSMRE may invoke 42 U.S.C. § 4336a(g)(2), which allows the agency to extend the deadline to complete the EIS "in consultation with the applicant."  That consultation with Signal Peak has not yet occurred, but it could occur at any point prior to the EIS completion deadline.  As a result of that consultation, Signal Peak and OSMRE may be able to agree on a schedule, but even if they do not, the statute authorizes the Department to extend the deadline to include "only so much additional time as is necessary to complete" the EIS.  *Id.*  Given that this consultation has not yet occurred, but likely will, it would be premature for the Court to become involved at this time.  *See Toca Producers v. FERC*, 411 F.3d 262, 266 (D.C. Cir. 2005) ("Prudence . . . restrains courts from hastily

intervening into matters that may best be reviewed at another time or another setting.") (quoting *Wyo. Outdoor Council*, 165 F.3d at 50)).

In sum, Plaintiff's suit claiming that OSMRE failed to meet a statutory deadline was brought prematurely and, thus, should be dismissed for lack of jurisdiction as not ripe.

## II.     Signal Peak's Complaint Should Be Dismissed for Failure to State a Claim

Signal Peak's complaint also fails to state a claim under Rule 12(b)(6) because it does not allege that OSMRE has failed to take an action that it is legally obligated to take. The statute in question provides that "[a] project sponsor may obtain a review of an alleged failure by an agency to act in accordance with an applicable deadline under this section by filing a written petition with a court of competent jurisdiction . . . ." 42 U.S.C. § 4336a(g)(3). But Signal Peak has not alleged such a failure here, nor could it, because OSMRE's two-year timeline to complete an EIS under Section 4336a(g)(1)(A) has not yet lapsed. *See* Compl. ¶¶ 113-20. And there is no other applicable deadline that Signal Peak could plausibly enforce because Section 4336a(a) does not impose any interim deadlines for agencies preparing an EIS.

Signal Peak attempts to avoid this problem by arguing that NEPA, as amended by the FRA, allows an applicant to file a lawsuit before the two-year deadline has passed. It alleges, "OSMRE *is not conducting* its review of the AM3 EIS 'in accordance with [the] applicable deadline' because it does not project that *it will comply* with the statutory deadline of December 2, 2024." Compl. ¶ 118 (emphasis added). The statute, however, does not contemplate lawsuits where a party *anticipates* that an agency will miss a deadline. Instead, the statute provides that a party may bring suit only when "an agency *has failed* to act in accordance with an applicable deadline." 42 U.S.C. § 4336a(g)(3)(B) (emphasis added). Because any "applicable deadline" is in the future, no failure to act has yet occurred, and no cause of action is available to Plaintiff

under Section 4336(a)(g).  Plaintiff's attempt to read the statute to create a cause of action prior

to the passing of a deadline is inconsistent with the text of the statute and should be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed in its entirety for

lack of jurisdiction under Rule 12(b)(1) for lack of ripeness or, alternatively, for failure to state a

claim under Rule 12(b)(6).

Respectfully submitted this 22nd day of April, 2024,

TODD KIM
Assistant Attorney General
Environmental & Natural Resource Division

GUILLERMO A. MONTERO
Assistant Chief, Natural Resources Section

/s/ *Luther L. Hajek*
LUTHER L. HAJEK
Trial Attorney (D.C. Bar: 467742)
United States Department of Justice
Environment and Natural Resources Division
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
E-mail: luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*