TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
LUTHER L. HAJEK
Senior Attorney Natural Resources Section
18th St. South Terrace, Suite 370
Denver, CO 80202
303-844-1376 || 303-844-1350 (fax)
*Counsel for Federal Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC, | Civil Action No. 1:24-cv-00366-TSC |
| Plaintiff, | |
| v. | **DECLARATION OF MARCELO CALLE** |
| DEBRA A. HAALAND, et al. | |
| Defendants. | |

I, Marcelo Calle, in accordance with the requirements of 28 U.S.C. § 1746, declare:

1.      I am employed by the United States Department of the Interior, Office

of Surface Mining Reclamation and Enforcement (OSMRE) as the Program

Support Division Manager for the Western Region, Interior Regions 5, 7, 8, 9,

10 and 11.  I have been employed with OSMRE in this capacity since November

27, 2016.

2.      In my capacity as the Program Support Division Manager, I oversee OSMRE's National Environmental Policy Act (NEPA) compliance for projects under OSMRE-administered Federal land, Indian lands, and abandoned mine land (AML) programs in OSMRE's Western Region, Interior Regions 5, 7-11. In this capacity, I exercise supervisory oversight over OSMRE's two project managers who are responsible for developing environmental assessments (EAs) and environmental impact statements (EISs) for projects in the States of Colorado, Montana, New Mexico, North Dakota, Utah, Washington, and Wyoming and on Indian lands, as defined in the Surface Mining Control and Reclamation Act of 1977 (SMCRA), in the Western United States.

3.      I am currently supervising the preparation of an EIS for the Bull Mountains Mine.  In addition, I am also supervising the preparation of five additional EISs in three states, one EA, and OSMRE's participation as a cooperating agency on another EIS.  OSMRE is allocating limited agency resources to meet the needs of multiple applicants, all with important interest in a timely NEPA analysis.

4.      In a January 20, 2023, declaration to the United States District Court for the District of Montana, Missoula Division, I explained that preparing an EIS for the Bull Mountains Mine would "require a significant amount of work"

and anticipated that it would require at least 17 months to complete an EIS.  At the time, OSMRE was requesting that the court not vacate the mining plan modification or, at a minimum, defer vacatur while OSMRE completed the remedial NEPA analysis.  The assumption underlying OSMRE's 17-month estimate was that the mine would continue to mine under its approved mining plan, as outlined in the mine's surface mining permit issued by the Montana Department of Environmental Quality (MDEQ) as revised by Amendment 3 to that permit, while OSMRE completed its NEPA analysis.

5.      Since the time of that declaration, OSMRE has worked diligently to prepare the EIS.  Unfortunately, OSMRE has had to revise its proposed timeline for completing the EIS, in part due to repeated modifications to the proposed mining operation by Signal Peak Energy, LLC (SPE or Signal Peak), delays in Signal Peak approving a statement of work (SOW) with its EIS contractor, and difficulty obtaining necessary information from Signal Peak.

**Signal Peak's amendments to the mining plan**

6.      When the mining plan modification for the leased Federal coal within Amendment 3 was vacated by the court, Signal Peak was no longer authorized to mine Federal coal within that area.  In order to keep mining, Signal Peak had to modify its mine plan to avoid Federal coal by applying for a surface mining permit amendment, Amendment 4, from Montana Department of Environmental

Quality (MDEQ). Signal Peak submitted the Amendment 4 application to MDEQ on February 17, 2023; MDEQ determined the application to be complete on July 10, 2023, and approved Amendment 4 on November 3, 2023. MDEQ's approval of Amendment 4 enabled Signal Peak to continue mining non-Federal coal.  Although Amendment 4 only involved non-Federal coal, the revision of the surface mining permit impacted OSMRE's NEPA analysis because, instead of using the No Action Alternative from OSMRE's earlier environmental assessments, OSMRE had to develop a new No Action Alternative based on Signal Peak's plans to mine according to Amendment 4.

7.      Signal Peak also changed the proposed action that OSMRE had to analyze under NEPA.  OSMRE's prior environmental assessments had only analyzed the mining plan as modified by Amendment 3. However, on February 17, 2023, Signal Peak informed OSMRE that it was in the process of submitting an application for a permit revision, Amendment 5, to MDEQ. At that time, OSMRE made SPE aware that details of the revised mining plan would be important to development of the EIS. Signal Peak presented preliminary conceptual information on Amendment 5 to OSMRE in advance of the March 24, 2023, project kickoff meeting.  Amendment 5 would have expanded the operations to the northeast and northwest and included new mining areas that had never been analyzed by either MDEQ or OSMRE.  Signal Peak

subsequently submitted the Amendment 5 application to MDEQ on June 2, 2023, and OSMRE received a copy of the application.  After reviewing Signal Peak's application, OSMRE made the determination that Amendment 5, which included mining leased Federal coal not previously approved by the Assistant Secretary for Land and Minerals Management (ASLM), would require a mining plan modification approval, triggering the requirement that the amendment be analyzed under NEPA.  Because OSMRE was already conducting a NEPA analysis for Amendment 3 and to ensure that the combined impacts of the proposed mining activities were properly analyzed, OSMRE determined that it would be appropriate to analyze Amendments 3 and 5 jointly in one NEPA process rather than analyzing the actions separately.  Adding Amendment 5 required OSMRE to modify the Proposed Action to include both Amendment 3 and Amendment 5, which added time to the NEPA process because the additional impacts associated with Amendment 5 had to be analyzed.  A map of the Proposed Action with Amendments 3 and 5 that was presented at the public scoping meeting is below.

# Bull Mountains Mine
## Amendment 3 and 5
## Environmental Impact Statement

 

## Proposed Action

8.      On August 7, 2023, OSMRE published its "Notice of Intent to Prepare an Environmental Impact Statement for Signal Peak Energy, LLC's Federal Mine Plan for Federal Lease MTM-97988; Bull Mountains Mine Amendment 3 and 5 EIS" in the *Federal Register*.  The Notice of Intent (NOI) indicated that the EIS would evaluate Amendments 3 and 5.  Materials presented by OSMRE at the Public Scoping meeting on August 30, 2023, depicted Amendment 4 as part of the No Action alternative.

9.      OSMRE had a 30-day public scoping period, which extended from August 7, 2023, through September 6, 2023.  OSMRE received 302 comment documents during this period.  OSMRE identified 501 scoping comments from the 302 comment documents.  Approximately 59% of the comments (297 comments) concerned water resources, with 154 raising concerns over impacts to livestock grazing and water usage and 10, which specifically addressed concerns about subsidence. Other comments included, but were not limited to, greenhouse gases and climate change (30), environmental consequences in general (18), socioeconomic and environmental justice (17), and air quality (12).

10.     While OSMRE was scoping the EIS for Amendments 3 and 5, MDEQ notified Signal Peak of deficiencies in its application for Amendment 5, which Signal Peak would need to correct before MDEQ would consider its application further.  Instead of correcting the application for Amendment 5, on November 7,

2023, Signal Peak applied to MDEQ for another surface mining permit revision that would provide Signal Peak with access to additional non-Federal coal, Amendment 6.  As depicted on the map below, Amendment 6 is immediately adjacent to Amendment 3 and would mine part of the non-Federal coal included in Amendment 3.



11.     While Amendment 6 did not propose to include leased Federal coal, it did impact OSMRE's NEPA analysis by changing the No Action and Proposed Action Alternatives.  OSMRE had originally included all non-Federal coal in Amendment 3 within the Proposed Action because Signal Peak had previously asserted that they could not mine any of the non-Federal coal in Amendment 3 without also mining the Federal coal.  However, because Signal Peak now plans to mine the non-Federal coal in the Amendment 6 area before the remaining Amendment 3 area, the No Action Alternative now contains more non-Federal coal while the Proposed Action area now contains less non-Federal coal than originally anticipated.  In addition, the direction and pacing of mining has shifted.  OSMRE became aware of the application for Amendment 6 during the November 8, 2023 project meeting.  At that time, OSMRE requested that SPE provide additional information on Amendment 6, including drawing files for the revised No Action Alternative, and provide a summary of information (i.e., additional tons of coal produced, acreages, years of coal production, etc.) associated with the revised No Action Alternative to OSMRE for review.  The late incorporation of Amendment 6 resulted in additional project delays.

12.     Signal Peak did not submit a revised application for Amendment 5, and MDEQ never determined the application to be complete.  On December 20, 2023, Signal Peak withdrew Amendment 5.  MDEQ determined the

Amendment 6 application to be administratively complete on April 1, 2024.

13.    Because OSMRE's initial NOI and public scoping to date had indicated that the Bull Mountains Mine would include both Amendments 3 and the now withdrawn Amendment 5 and did not account for Amendment 6, OSMRE determined that there were enough changes to the project to warrant issuing scoping revision notification letters letting commenters know that the No Action and Proposed Action alternatives have changed since the NOI and initial scoping comment period.  OSMRE sent letters to nearby landowners, interested parties, and tribes on May 15, 2024, inviting additional comment. The comment period will close on June 14, 2024.

**Signal Peak's delay in approving modifications to the Statement of Work**

14.    On or about March 27, 2023, Signal Peak approved a Statement of Work (SOW) with ICF, a contractor who would work with OSMRE to prepare the EIS.  The initial SOW assumed that analysis of all resource areas except air quality and climate change could substantially rely on information in the existing NEPA documents from 2015, 2018 and 2020 and that minimal additional data gathering or analysis would be required outside of the air quality and greenhouse gas work.

15.    On March 27, 2023, OSMRE and Signal Peak executed a Memorandum of Understanding (MOU) to document the procedures to be

followed in preparation of the EIS.

16.     When conducting a NEPA analysis, it is important to conduct a data analysis review to determine what information exists about a proposed project and whether additional information is necessary for the NEPA analysis.

17.     For this analysis, OSMRE worked with ICF to complete a data analysis review, which, at the time, included Amendments 3 and 5.  Part of this review included having OSMRE and ICF hydrologists review the existing hydrological analysis for the Bull Mountains Mine.  These hydrologists concluded that, for three primary reasons, additional hydrologic analyses were required to satisfy OSMRE's NEPA obligations.

18.     First, Signal Peak submitted an updated groundwater model to MDEQ in 2023 as part of the applications for its surface mining permit revisions— Amendments 4, 5, and 6.  This model provided more up-to-date information on groundwater modeling than had existed when the prior NEPA analyses were conducted several years ago and included the full area that could be impacted by the proposed action, not just Amendment 3.  Specifically, the 2016 groundwater model that OSMRE used in its prior NEPA documents did not consider the area included in Amendments 4, 5, or 6.  Unfortunately, MDEQ indicated that it was not likely to complete its evaluation of the 2023 model's accuracy until the summer of 2024.  OSMRE notified Signal Peak that it wanted to include the

2023 model in its NEPA review, but because MDEQ was not going to finish reviewing the 2023 model until the summer of 2024, OSMRE suggested that the SOW be modified to allow ICF to conduct its own review of the model on a faster timeline.  Signal Peak asserted that incorporation of the 2023 model was not warranted and did not authorize ICF to conduct the review.  As a result, OSMRE is required to wait for MDEQ to finish its analysis of the 2023 model before it can be used.

19.     Second, OSMRE determined that the subsidence report offered by Signal Peak was deficient. During scoping, OSMRE received several public comments raising concerns about the surface effects of subsidence.  OSMRE and MDEQ have also received several complaints from citizens over the last few years about concerns with the surface impacts of subsidence at this mine. Because the subsidence report was determined to be deficient and because of the documented public concerns about subsidence impacts from the mine, OSMRE determined that additional study of the surface effects of subsidence was warranted.  Signal Peak asserted that additional study was not necessary.

20.     Third, OSMRE determined that additional analyses were necessary to understand the potential risk of downgradient and off-site impacts from waste disposal areas at the mine site.  OSMRE determined that the existing data and analyses were deficient in supporting a finding of effect.  Again, Signal Peak

disagreed with OSMRE's assessment.

21.     OSMRE believes that the supplemental analyses described above are necessary for this NEPA process.  These additional analyses necessitated that the SOW contract with ICF be modified.  Without a modification, ICF did not have authorization or funding to do the additional work needed to complete the NEPA analysis.  In August 2023, ICF notified SPE that the SOW needed to be modified to authorize ICF to collect and analyze data related to the expanded scope and these three issues.  SPE repeatedly refused to include this work in the SOW, which delayed the work.  OSMRE expects to rely, in part, on analyses expected to be completed by MDEQ this summer through incorporation by reference.

22.     As a result of Signal Peak's refusal to approve the SOW modification, by the beginning of February 2024, ICF had minimal funds remaining to continue work on the NEPA analysis, and project meetings were put on hold after February 7, 2024, pending resolution of the SOW modification impasse.

23.     On February 20, 2024, Signal Peak sent OSMRE a letter purporting to approve the SOW with certain "conditions and objections."  Because the conditions contained in the letter were not acceptable to OSMRE, ICF, acting on behalf of OSMRE, did not conduct work on the project under the "conditionally approved" SOW modification.

24.     It was not until April 12, 2024, that Signal Peak approved the SOW

without conditions and objections, and ICF could restart more substantive work

on the project.

**Alternatives analysis delay**

25.     In February 2023, following the September 30, 2022, decision by the

U.S. District Court for the District of Montana finding that OSMRE's

alternatives analysis for a different mine in Montana violated NEPA because it

did not evaluate a "middle-ground" alternative, *Montana Env't Info. Ctr. v.

Haaland*, No. CV 19-130-BLG-SPW, 2022 WL 4592071, at *12-13 (D. Mont.

Sept. 30, 2022), and the Council on Environmental Quality's ("CEQ") issuance

of National Environmental Policy Act Guidance on Consideration of

Greenhouse Gas Emissions and Climate Change, 88 Fed. Reg. 1,196 (Jan. 9,

2023), the Department instructed OSMRE to consider whether it was possible to

develop and analyze a third "middle ground" alternative in addition to the

Proposed Action and No Action Alternatives in all ongoing EISs for the Signal

Peak project.

26.     Consistent with volatility in the mining sector, the decision in

*Montana Env't Info Ctr. v. Haaland*, and CEQ's guidance stating that "agencies

should evaluate reasonable alternatives that may have lower GHG emissions,"

OSMRE investigated the development of a middle ground alternative for all

pending NEPA analyses.  The development of such an alternative for a Federal mining plan modification was unprecedented and raised many complex legal and logistical questions that needed to be evaluated by numerous different offices within the Department.

27.    OSMRE notified Signal Peak that its NEPA analysis would include a third alternative that would consider an approval to mine a portion of the leased Federal coal at a project meeting among OSMRE, the EIS contractor, BLM, EPA, and Signal Peak representatives on January 10, 2024.  At that same meeting, OSMRE asked Signal Peak to provide additional information to help it develop a feasible partial mining alternative for analysis.

28.    Because the development of the alternatives, including the third middle ground alternative, relied upon the execution of the SOW modification, no work could proceed in developing the third middle ground alternative as well as the necessary revisions required for the Proposed Action and No Action alternatives.

29.    Signal Peak agreed to provide the requested information during an April 25, 2024, meeting.  However, Signal Peak did not provide any of the requested information until May 28, 2024.  OSMRE has not yet had a chance to evaluate the material to determine whether it is sufficient.

**Departmental Review Team**

30.     In preparing its NEPA documents, OSMRE complies with Department of the Interior guidance that requires that all actions that are likely to have significant effects on the human environment be reviewed by the Department before publication of NOI to prepare an EIS to determine whether the project should go through the Departmental Clearance Process with the Departmental Review Team (DRT).  This requirement is outlined in ERM 10-11.

31.     In March 2023, OSMRE was informed that this project was selected for DRT review.  OSMRE participated in a DRT briefing on July 10, 2023, as required by "Stage 1" of ERM 10-11.  OSMRE received clearance from the DRT after that meeting, and the NOI was published shortly thereafter on August 7, 2023.

32.     Stage 1a of ERM 10-11 requires a second briefing after the NOI if "material changes" occur after scoping is completed.  Because of the changes to the project that resulted from Signal Peak's withdrawal of Amendment 5 and addition of Amendment 6, OSMRE requested a Stage 1a briefing on February 7, 2024.  But on March 1, 2024, OSMRE was notified by the Principal Deputy Assistant Secretary, Land and Minerals Management, that the DRT did not require a briefing.

I swear under penalty of perjury that the foregoing is true and correct.

This 29 Day of May 2024.

Marcelo Calle
Program Support Division Manager