**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEB HAALAND, Secretary of the Interior, | )    Case No. 1:24-CV-366 |
| the DEPARTMENT OF THE INTERIOR, | ) |
| LAURA DANIEL-DAVIS, Acting Deputy | ) |
| Secretary, SHARON BUCCINO, Principal | ) |
| Deputy Director of Office of Surface Mining | ) |
| and Reclamation, OFFICE OF SURFACE | ) |
| MINING RECLAMATION AND | ) |
| ENFORCEMENT | ) |
| | ) |
| Defendants. | ) |
| | ) |

**SIGNAL PEAK ENERGY, LLC'S REPLY IN SUPPORT OF MOTION TO LIFT STAY**

**(EXPEDITED REVIEW REQUESTED)**

**INTRODUCTION**

Despite spending a disproportionate 23 pages purportedly rebutting Signal Peak Energy, LLC's ("Signal Peak") 5-page motion to lift the stay, Defendants fail to address the key point: This Court's basis for entering the stay no longer exists because the alleged statutory deadline for the Office of Surface Mining Reclamation and Enforcement ("OSMRE") to issue the AM3 Environmental Impact Statement ("EIS") has now lapsed.  Defendants instead spend their entire brief arguing that Signal Peak's *alleged* statutory deadline of December 2, 2024 is incorrect and that the *actual* statutory deadline is August 7, 2025.  This argument, however, is one that must be decided at summary judgment and is non-responsive to the only issue before the Court—whether to lift the stay, which was premised on the fact that the *alleged* deadline had not yet lapsed.  ECF No. 44 at 18 ("Stay Order").[1]

Defendants do not, and cannot, contest the plain fact that December 2, 2024 has passed and that the alleged deadline therefore has lapsed.  Nor do Defendants contest the fundamental principle that a stay should be lifted "[w]hen circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate."  *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003); *see also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002) (same).  This is dispositive.  Because the basis for the stay no longer exists, the stay should be lifted so that the parties may proceed to the merits issue that Defendants have prematurely raised here—whether OSMRE has failed to act in accordance with its statutory deadline.

---

[1] The Stay Order's focus on the alleged deadline is consistent with the statutory text, which provides a private right of action for "an ***alleged*** failure by an agency to act in accordance with an applicable deadline."  42 U.S.C. § 4336a(g)(3) (emphasis added).

## I.    The Basis for the Stay No Longer Exists.

This Court was clear in explaining the basis for the stay.  As of August 2024, this case was "not yet fit for a judicial decision because a critical fact is not fully crystallized: the Government has not yet missed the alleged EIS deadline."  Stay Order at 18.  To state the obvious, the alleged deadline of December 2, 2024 has now passed, which means the Government has now "missed the alleged EIS deadline."  *Id.* at 18.  Defendants do not contest this, as doing so would be absurd.

Defendants nonetheless argue the stay should remain in place because the date that they contend is actually the statutory deadline has not yet passed.  This tactic puts the cart before the horse.  For purposes of the Defendants' Rule 12(b)(1) motion to dismiss for lack of ripeness, the Court was required to accept as true all factual allegations in the Complaint.  *Louis v. Hagel*, 221 F. Supp. 3d 40, 42 (D.D.C. 2016).  Citing the facts set out in the Complaint, the Court resolved that motion by staying the case for lack of prudential ripeness; thus, no fact-finding has occurred, and the case has not advanced beyond the motion to dismiss stage.  When evaluating whether to lift the stay because the bases for the ripeness concern no longer exist, the Court must continue to accept as true Signal Peak's factual allegations in the Complaint.  To the extent Defendants wish to refute the allegations in Signal Peak's Complaint and argue that the actual statutory deadline has not passed, that is an argument for summary judgment.

Given that the administrative record is not complete and there are no pending motions for summary judgment, it would be procedurally improper for this Court to adjudicate the actual statutory deadline at this time.  Doing so would also be highly prejudicial to Signal Peak.  Under normal procedures, Signal Peak would have the opportunity to file its own summary judgment motion, followed by an opposition from Defendants and a reply from Signal Peak.  By smuggling their summary judgment arguments into the dispute over whether to lift the stay,

Defendants in effect seek to deprive Signal Peak of the opportunity to fully present its case on the merits.

If Defendants wanted this Court to resolve the merits of the statutory deadline, they would not oppose the motion to lift the stay and would welcome the opportunity to resolve the issue on summary judgment.  Rather than following this straightforward approach, Defendants have created needless delay and confusion, taking the circular position that this Court should decide the merits now in order to avoid adjudicating the merits.  This Court should reject Defendants' gamesmanship and instead lift the stay so that both sides have a full opportunity to argue the merits pursuant to normal procedures.  For instant purposes, only one thing matters: Because the alleged deadline has indisputably passed, "circumstances have changed such that the court's reasons for imposing the stay no longer exist."  *Marsh*, 263 F. Supp. 2d at 52.  There is now a live and ripe controversy between the parties for which this Court should lift the stay and proceed with further adjudication.[2]

## II.    THE STAY SHOULD BE LIFTED SO THAT SIGNAL PEAK MAY PRESENT ITS FULL ARGUMENTS AS TO WHY OSMRE HAS FAILED TO ACT IN ACCORDANCE WITH THE STATUTORY DEADLINE.

At the proper time—during summary judgment briefing—Signal Peak will provide further support establishing that the statutory deadline was December 2, 2024.  But in order to avoid any impression that Signal Peak lacks such arguments, Signal Peak briefly sets forth the following points, for which it will provide more detail once the stay is lifted.

---

[2] Defendants regurgitate several arguments from their motion to dismiss for their contention that "the alleged failure to meet a deadline must occur *before* a petition can be filed."  Defs.' Br. at 17 (emphasis in original).  Because the alleged deadline has in fact passed, these arguments are obsolete.

**A.**     **OSMRE is in Violation of NEPA for Failure to Act in Accordance with the Two-Year EIS Deadline for the Bull Mountains Mine.**

*1.*     *The Statutory Deadline Is December 2, 2024.*

The National Environmental Policy Act ("NEPA") provides two trigger dates for the two-year EIS deadline and applies the "sooner" of (1) "the date on which [the] agency determines that [NEPA] requires the issuance of an [EIS] with respect to such action," or (2) "the date on which [the] agency issues a notice of intent to prepare the [EIS]."  42 U.S.C. § 4336a(g)(1)(A). Here, Defendants contend that the statutory deadline was not triggered until OSMRE issued the Notice of Intent on August 7, 2023.  Defs.' Br. at 1, 8.  This fixation on the Notice of Intent ignores the statute's plain statement that the two-year clock commences on "the sooner of" the Notice of Intent *or* the agency's determination that an EIS is required.  42 U.S.C. § 4336a(g)(1)(A).  The record shows that OSMRE determined an EIS was required on December 2, 2022, eight months before issuing the Notice of Intent.  Phipps Decl. Ex. B, at 31, ECF No. 18-1 at 51 (transcript of December 2, 2024 court hearing in which counsel for Defendants stated that "I heard counsel [for Signal Peak] say that his client would not object if the government decided to prepare an EIS, and indeed, that is what the government intends to do.").  OSMRE reaffirmed this position in a court filing on January 20, 2023.  Fed. Defs.' Br. Regarding Vacatur at 1, *350 Mont. v. Haaland*, No. 19-cv-00012-DWM (D. Mont. Jan. 20, 2023) ("As the court is aware, OSMRE has decided to prepare an EIS to address the deficiencies in its earlier NEPA analysis identified by the Ninth Circuit.").

Defendants err in their argument that the two-year clock could not have started in December 2022 because the controlling statute was not enacted until June 2023.  As a threshold matter, Defendants themselves concede that the NEPA amendments "appl[y] to ongoing NEPA processes."  Defs.' Br. at 12.  And the NEPA amendments do not include a grandfather clause

precluding application to NEPA processes begun before June 2023. *See Buckeye Cablevision, Inc. v. FCC*, 387 F.2d 220, 227 (D.C. Cir. 1967) (noting a rule was "not retroactive" where it "confers 'grandfather rights' upon those systems" in place before the regulations were announced). Defendants mistakenly point to *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994), for the proposition that courts should not apply a statute retroactively "where retroactivity would attach 'new legal consequences to events completed before its enactment.'" Defs.' Br. at 12. This language is inapposite because the statutory deadline here does not apply to "events completed" before statutory enactment. To the contrary, the statutory deadline governs agency actions that are not yet completed. Indeed, ensuring timely completion of agency actions is the entire point of the deadline.

Moreover, the case law shows that concerns about retroactively applying statutes are focused on "contractual or property rights," where "predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271. Principles of anti-retroactivity are also sometimes applied where a statute imposes "new monetary obligations" on the government. *Id.* at 271 n.25. Here, the statute simply imposes a deadline for agency action. It does not alter contractual or property rights, nor does it impose new monetary obligations on the government. Thus, the anti-retroactivity principles do not apply.[3]

Finally, Defendants mistakenly rely on regulations and guidance from the Council on Environmental Quality ("CEQ"). Defs.' Br. at 10-12. First, the validity of CEQ regulations is

---

[3] Defendants further err in arguing that a December 2024 deadline would "disturb settled expectations." Defs.' Br. at 13. *Landgraf* makes clear that a disruption of expectations is by itself insufficient to preclude a statute's application to "conduct antedating the statute's enactment." 511 U.S. at 269. Moreover, the statute here provides for opportunities for consultation and extension in situations where a strict two-year deadline may be infeasible. 42 U.S.C. § 4336a(g)(2). Rather than avail itself of these provisions, OSMRE has simply ignored the two-year deadline.

uncertain in light of the D.C. Circuit's recent decision in *Marin Audubon Society v. FAA*, 121 F.4th 902 (D.C. Cir. 2024), finding that CEQ lacks the authority to issue binding regulations implementing NEPA.  Second, CEQ guidance is not binding legal authority, and in any event, the CEQ regulations and guidance cited by Defendants do not bear on the issues of this case, as they address the deadline only "for purposes of the annual report" issued to Congress.  CEQ Mem. for Heads of Exec. Depts. and Agencies re: Reports to Congress on Deadlines Under NEPA (May 31, 2024), *available at* https://ceq.doe.gov/docs/ceq-regulations-and-guidance/Memorandum_on_NEPA_Deadline_Reports_to_Congress.pdf (last visited Dec. 26, 2024).[4]  Even if CEQ guidance were binding, Defendants fail to reconcile competing statements from the agency in its preamble to its newly promulgated NEPA regulations that the NEPA amendments apply to ongoing projects.  85 Fed. Reg. 35,442, 35,530 (May 1, 2024) (the "amendments to NEPA were effective upon enactment . . . [and] applicable to ongoing review").  Regardless, CEQ regulations and guidance cannot trump the statutory text.

> 2.    *The Statutory Deadline Has Not Been Extended Through Consultation with Signal Peak.*

Given the applicability of the December 2, 2022 deadline, the next question is whether OSMRE has availed itself of a permissible extension.  NEPA excuses an agency's failure to meet the two-year deadline only under very limited circumstances.  Specifically, the statute provides that the agency "may extend such deadline, in consultation with the applicant, to establish a new deadline that provides only so much additional time as is necessary to complete [the EIS] . . . ."  42 U.S.C. § 4336a(g)(2).  Because OSMRE concedes it has not yet consulted with Signal Peak

---

[4] Even if the CEQ guidance applied for purposes of establishing the starting point for measuring the deadline, it states that the two-year deadline for ongoing EISs should start no later than the enactment of the NEPA amendments on June 3, 2023.  *Id*. at 1.

regarding a deadline extension (Joint Status Report at 2, ECF No. 48), the agency cannot avail itself of this provision.

Defendants also miss the mark with their argument that Signal Peak somehow nullified the statutory clock by placing conditions on the EIS process. Defs.' Br. at 13-14. Defendants do not identify any communication from Signal Peak requesting that the EIS process be halted. No such communication exists and, to the contrary, Signal Peak promptly reached out to OSMRE in December 2022 to begin coordination of EIS funding, despite uncertainty regarding whether the Montana district court would vacate its federal mine permit. Comp. ¶ 71; *see also* OSMRE023950-54 (email correspondence from Jan. 11 to Feb. 13, 2023 regarding third-party contract for EIS). Moreover, Defendants' claim that the Montana district court's February 10, 2023 vacatur order somehow halted the EIS process is belied by a scope of work only three days later in which OSMRE's EIS contractor stated that "OSMRE has determined that new NEPA analysis in the form of an EIS will need to be prepared to support the proposed Federal mining plan modification." OSMRE023957. In short, Signal Peak has never wavered on the need for an expeditious EIS. As a result, Defendants cannot excuse OSMRE's unlawful delay by pointing the finger at Signal Peak.

### B.    OSMRE's Delay Is Unreasonable in Violation of the APA.

OSMRE has also violated the Administrative Procedure Act ("APA") by failing to act on the mine plan within a reasonable time. As part of its analysis of this issue, the Court must consider the six factors set out in *Telecomms Rsch. & Action Ctr. ("TRAC") v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984): (1) whether the agency's timeline is governed by the rule of reason; (2) whether Congress has provided a timeline; (3) whether health and human welfare are at stake; (4) the effect of expediting the delayed action on other agency activities of higher or competing priority; (5) the nature and extent of interests prejudiced by the agency's delay; and

(6) impropriety on the part of the agency, although such a finding is not required to hold that the agency has violated Section 706(1).  As Signal Peak will further explain at the summary judgment stage, at least five of the factors point toward OSMRE's unreasonable delay (the rule of reason, NEPA's deadline, human health and welfare, the interest prejudiced by delay, and impropriety on the part of the agency), and one is potentially neutral (the effect of delay on competing agency priorities).  On balance, the *TRAC* factors support a finding of unreasonable delay and an order for the agency to set a schedule that complies with NEPA.

*       *       *

Again, all of these arguments about whether OSMRE has failed to act in accordance with the *actual* statutory deadline are irrelevant to the only issue currently before the Court—whether to lift the stay given the lapse of the *alleged* statutory deadline.  In order to allow more robust briefing on whether OSMRE has violated its statutory obligations, this Court should lift the stay and allow the parties to proceed expeditiously to summary judgment.

## III.    ALTHOUGH HARDSHIP IS IRRELEVANT TO THE INSTANT MOTION, SIGNAL PEAK CONTINUES TO SUFFER SEVERE HARDSHIP.

As with the statutory deadline, Defendants put the cart before the horse with respect to Signal Peak's hardship—asserting that Signal Peak "cannot demonstrate such harm because it has no legal right to demand that OSMRE complete the EIS before the statutory period expires." Defs.' Br. at 21.  Because Signal Peak alleges that the statutory deadline has already expired, Defendants' argument is non-responsive to the issue of whether the stay should be lifted.

In addition, Defendants fail to grapple with the fact that the hardship prong of prudential ripeness is irrelevant now that the alleged deadline has lapsed.  *See* Signal Peak's Motion to Lift Stay at 4, ECF No. 49.  In *Natural Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 166 (1988), the D.C. Circuit explained that "for a claim to be ripe, the interests of the court and agency in

postponing review until the question arises in some more concrete and final form [must be] outweighed by the interests of those who seek relief from the challenged action's immediate and practical impact upon them." (quotations omitted).  The phrase "until the question arises in some more concrete and final form" indicates that hardship is considered only when the question is not yet in concrete and final form.  In such cases, a showing of severe hardship could outweigh the fact that the question is premature and thus favor a finding that the issue is prudentially ripe.  But if the question in dispute is already in "concrete and final form," that is dispositive.  In such cases, there is no basis for a stay regardless of harm.

Consistent with this D.C. Circuit precedent, the Stay Order recognized that the hardship prong would no longer be relevant once the alleged deadline passed.  *See* Stay Order at 18 (Signal Peak "is not likely to suffer further hardship if the court defers its review ***until the alleged EIS deadline elapses***." (emphasis added)).  Now that the alleged deadline has passed, the facts are "fully crystallized"—*i.e.*, "concrete and final."  Stay Order at 18; *Natural Res. Def. Council*, 859 F.2d at 166.  This alone is sufficient to nullify the basis for the stay and renders obsolete any need for Signal Peak to establish harm in continuing to stay the case.

In any event, Defendants are incorrect in their irrelevant argument that Signal Peak has failed to establish harm.  According to Defendants, "the only cognizable interest that Signal Peak has in this case is a procedural interest in having OSMRE issue an EIS in compliance with NEPA."  Defs.' Br. at 21.  This is wrong.  Rather than having merely an abstract procedural interest in the timing of OSMRE's EIS, Signal Peak has a property interest in federal coal leases, *W. Watersheds Project v. Haaland*, 22 F.4th 828, 842 (9th Cir. 2022) (a federal mineral lease is a property interest), and the exercise of those leases is not possible until OSMRE fulfills its procedural obligations under NEPA and the APA.  Unless and until OSMRE issues a new EIS,

Signal Peak's AM3 mine expansion will remain vacated, thereby precluding Signal Peak from mining large swaths of coal. Stay Order at 16 ("Because much of AM3 contains patches of federal coal, [Signal Peak] cannot continue to mine it until the Government completes the EIS."). This harm is tangible and real, as further explained in Signal Peak's briefing for preliminary injunction. Signal Peak's Mot. for Prelim. Inj. at 26-30, ECF No. 18.

Relatedly, Defendants are incorrect in their suggestion that the harm incurred by Signal Peak will be mitigated because "OSMRE has already committed to completing the EIS by August 2025." Defs.' Br. at 20. As a threshold matter, this purported "commitment" is legally insufficient given that August 2025 is eight months beyond the statutory deadline to issue an EIS. Moreover, OSMRE's so-called "commitment" is anything but, as OSMRE's projection of an August 2025 completion date is qualified by a statement that "many factors," including the "upcoming change in administration," could result in further delay. Joint Status Report at 2, ECF No. 48.

## IV.    SIGNAL PEAK REQUESTS THAT DEFENDANTS BE GIVEN TWO WEEKS TO COMPLETE THE ADMINISTRATIVE RECORD.

Defendants request that, if the stay is lifted, they be given thirty days to complete the administrative record. Defs.' Br. at 22. Given the relatively small universe of outstanding documents, Signal Peak believes two weeks is sufficient. Any further delay, which is already compounded by Defendants' misplaced opposition to the instant motion, continues to harm Signal Peak. Thus, Signal Peak requests that this Court order Defendants to complete the administrative record within two weeks of the Court's order lifting the stay.

## CONCLUSION

Defendants are seeking a premature ruling that the statutory deadline for OSMRE to complete the EIS is August 2025 rather than December 2024. That issue is not properly before

the Court. It will instead be presented and fully briefed at summary judgment, which can proceed only *after* the stay is lifted. Given the live controversy between the parties, this Court should lift the stay and allow the parties to move for summary judgment on the merits issue of whether OSMRE has failed to act in accordance with its statutory deadline to issue an EIS. In particular, the Court should order Defendants to complete the administrative record within two weeks of the stay being lifted, and order the parties to propose a briefing schedule for disposition on motions for summary judgment.

Dated this 27th day of December, 2024.

*/s/ Hadassah M. Reimer*

Sarah C. Bordelon
Holland & Hart LLP (D.C. Bar No. 987135)
5470 Kietzke Lane, Suite 100
Reno, NV 89511
Telephone: (775) 327-3000
scbordelon@hollandhart.com

Hadassah M. Reimer (Bar ID: WY002)
Holland & Hart LLP
P.O. Box 68
Jackson, WY 83001
Phone: (307) 739-9741
Fax: (307) 739-9744
hmreimer@hollandhart.com

William Mercer
Holland & Hart LLP
401 N. 31st St., Suite 1500
P.O. Box 639
Billings, MT 59103
Phone: (406) 252-2166
wwmercer@hollandhart.com

**ATTORNEYS FOR SIGNAL PEAK ENERGY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 27, 2024, I filed this document using the Court's electronic case-filing system, which will serve documents on all counsel of record.

<em>/s/ Hadassah M. Reimer</em>

33932091_v2